## Taylor, et al. v. Asher, et al.

(Decided February 21, 1919.)

### Appeal from Leslie Circuit Court.

1. Judgment — Collateral Attack — Jurisdiction. — A judgment rendered in a court of general jurisdiction cannot be collaterally attacked unless the want of jurisdiction affirmatively appears in the record.

2. Judgment—Collateral Attack.—Where the record shows that infants under 14 years of age were summoned by service upon their custodian, which was in accordance with section 52 of the Civil Code, if the father was dead or a non-resident of the state, and it does not appear from the record that he was alive and a resident of the state, the judgment is not void and cannot be collaterally attacked.

LEWIS & LEWIS for appellants.

CLEON K. CALVERT for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In 1887 Mrs. Elizabeth Wilson, who was a daughter of John and Jane Hall, died leaving surviving her, her husband, Charles Wilson, and three infant children, Pollie, Jennette and Jane Wilson. Shortly after her death, her mother and father executed to her three infant children a title bond for about 100 acres of land, located on lower Bad creek, in Leslie county, in consideration for which their father, Charles Wilson, gave to John Hall and his wife, the care, custody and control of his three children during infancy, and surrendered to John Hall a title bond he had for the same land and some personal property. The title bond to the infant children and the written contract between their father and grandparents were re-

corded in the office of the clerk of the Leslie county court, although the contract was not a recordable instrument. The three infant children thereafter made their homes with and were subject to the control of their grandparents, John Hall and Jane Hall, until 1893, when John Hall died intestate, the owner of a large body of land, but considerably in debt. Shortly thereafter William Hall was appointed as administrator, and on the 20th of June, 1894, instituted in the Leslie circuit court a suit to settle his estate, and to that suit numerous creditors and all of the heirs of John Hall, including the Wilson children, then infants under fourteen years of age, were made defendants, and the land for which John Hall and his wife had executed title bond to the Wilson children, was therein adjudged to be his land, and was sold to pay his debts, to Robert Asher, a son-in-law of John Hall, and Asher having died after the sale had been confirmed, but before a deed was made to him for the land, the deed therefor was by order of the court made by the master to Asher's widow and children, on the 6th day of April, 1898.

In this action, filed early in 1910, the three Wilson children sought to compel the widow and heirs of Robert Asher to specifically perform the title bond executed to them in 1887 by John Hall and his wife; to this petition the defendants, among other defenses, pleaded the judgment in the suit of John Hall's administrator against his heirs and creditors, as a bar. Upon a trial the chancellor dismissed the petition, from which judgment plaintiffs have prosecuted this appeal. The only question involved upon the appeal, is whether the judgment in the suit of John Hall's administrator against his heirs and creditors is void, because counsel for appellants concede that this is a collateral attack upon that judgment, and is maintainable only if that judgment is void.

To ascertain whether or not that judgment is void, we must look alone to the record in that case, since the rule is thoroughly established in this jurisdiction and elsewhere that a domestic judgment rendered in a court of general jursdiction cannot be collaterally attacked, unless the want of jurisdiction affirmatively appears in the record. Maysville & Big Sandy R. R. Co. v. Ball, 108 Ky. 275; Segal v. Reichert, 128 Ky. 117; Dennis v. Alves, 132 Ky. 345; Bamberger v. Green, 146 Ky. 259; Harrod v. Harrod, 167 Ky. 315; Ratliffe v. Childers, 178 Ky. 102;

Bentley v. Stewart, 180 Ky. 23; Fraize v. Walls, 180 Ky. 168; Freeman on Judgments, sec. 124; Black on Judgments, sec. 273.

The old record shows that each of plaintiffs was made a party defendant and summons issued against them, which was returned by the sheriff with the following endorsement thereon:

"Executed on Jane Hall, P. J. Hall, Robert Asher and Polly Asher by delivery to each of them a true copy of this summons and on Polly Wilson, Jennette Wilson and Jane Wilson by delivering a true copy of this summons to Jane Hall, their grandma, with whom they reside, they each being under fourteen years old. This August 1, 1894, G. H. Steele, shrff. Leslie Co."

The verified petition in that action contains the statement:

"That the defendants, Polly Wilson, Jennette Wilson and Jane Wilson, are infants of tender years under fourteen years and reside with and are under the control of Jane Hall, the defendant herein, and that said infants have no curator, committee nor guardian in this state or elsewhere known to the plaintiff, and he asks that a guardian *ad litem* be appointed for said infant children to defend for them."

The old record does not contain an order appointing a guardian *ad litem* for these infants, but at the following November term of the court, after the return of the summons with the above endorsement thereon, an answer was filed by a guardian *ad litem* for Polly, Jane and Jennette Wilson, in which it is recited that the guardian *ad litem* who filed the answer, had been appointed as such "at the present November term of this court."

It is insisted, however, by counsel for appellants that the judgment in the old case is void because (1) delivering a copy of summons to Jane Hall, the grandmother and custodian of the defendants, then under fourteen years of age, was not a valid service upon them as required by section 52 of the Code, since at that time, Charles Wilson, their father, was alive and a resident of Knox county, Kentucky, and (2) because the appointment and answer of the guardian *ad litem* were void and of no effect, because the infant defendants for whom he attempted to answer, had not been served with process before his appointment, as required by section 38 of the Civil Code.

It will therefore be seen that the sole ground for both these conclusions is the contention that the service of summons upon the custodian was illegal, and the court never acquired jurisdiction of appellants.

The first obstacle, an unsurmountable one, met by appellants in the attempt to sustain this contention upon a collateral attack is that it appears nowhere in the old record that Charles Wilson, the father of the infants, was alive and a resident of this state, at the time the summonses were served upon their grandmother and custodian, and this fundamental fact by which they seek to show that the service was illegal, does not affirmatively appear in the old record, and there is nothing therein to show that the services upon the custodian were not in strict accordance with the provisions of section 52 of the Code, which provides that if a defendant is under fourteen years of age, summons must be served on his father, or if he have no father, on his guardian, or if he have no guardian, on his mother, or if he have no mother, upon the person having charge of him. So even if we might admit that the service of the summons upon the custodian was not in accordance with the requirements of section 52 of the Code, a doubtful question under the peculiar conditions disclosed by the evidence in this action, that fact does not appear affirmatively or at all in the old record, and therefore under the authorities cited above is insufficient to render the judgment void.

It is therefore apparent that from a consideration of the old record to which we are confined, it does not affirmatively appear that appellants were not legally summoned, or that the guardian *ad litem* was not validly authorized to make defense for them, hence the judgment attacked, if erroneous, was not void, and the chancellor did not err in dismissing appellants' petition collaterally attacking it.

Wherefore, the judgment is affirmed.