## McComas et al. v. Hull et al.

Dec. 6, 1940.

J. G. Vallandingham, Judge.

C. C. Adams, F. A. Harrison and R. L. Vincent for appellants.

L. M. Ackman for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

This is a second appeal and the opinion on the former appeal appears in 274 Ky. 192, 118 S. W. (2d) 540. An examination of that opinion shows the judgment was reversed because certain parties were not brought before the court. The errors assigned whereby appellants seek a reversal of the judgment here appealed from are: 1. Failure to bring certain parties before the court; 2. the admission of incompetent evidence offered by appellees; 3. exclusion of competent evidence offered by appellants; 4. there was not sufficient evidence to warrant the jury in finding against the will.

Complaint is made that service was not properly had on Ward Evans, an infant under fourteen years of age, inasmuch as the sheriff's return shows that service was had upon this infant by delivering a copy of the summons to his mother when his father was living. Section 52 of the Civil Code of Practice provides that service on such infant must be had by delivery of the summons to the infant's father, but in Cheatham v. Whitman, 86 Ky. 614, 6 S. W. 595, 9 Ky. Law Rep. 761, and Cain v. Hall, 211 Ky. 817, 278 S. W. 152, it was written that where the father was served in the same action as was the infant and both the father and the infant were named in the body of the summons, as here, a delivery of one copy of the summons to the father constituted good service on the infant under Section 52 of the Civil Code of Practice, and it was unnecessary to deliver to

the father another copy of the summons for the infant. Here the father and infant were both named defendants in the summons and a delivery of one copy thereof to the father constituted good service on the infant and the delivery of a copy of the summons to the mother of the infant was mere surplusage.

It is further contended by appellants that Verlie B. Fletcher and her husband, Lucian, and Velma Lee Kinney and her husband, Howard, were named as defendants in the warning order but that the warning order attorney, R. L. Webb, did not mention these four parties in his report, therefore.they were not before the court. The record on the former appeal shows that these four persons were named in the warning order and that the warning order attorney appointed for them filed no report. These parties on the former appeal were named as appellants and one reason that the judgment was reversed was because they were not before the court. However, when that judgment was reversed and the case was sent back to the lower court for a second trial these four parties were before the court since they had entered their appearance through their appeal. Thompson v. Moore, 91 Ky. 80, 15 S. W. 6, 12 Ky. Law Rep. 664; Louisville & N. R. Co. v. S. D. Chestnut & Co., 115 Ky. 43, 72 S. W. 351, 24 Ky. Law Rep. 1846.

Further complaint is made that the non compos mentis defendant, Raymond McComas, was not properly served. The pleadings show he has a committee, G. C. Thornton, and the service of summons on this incompetent when the case was returned to the circuit court was had by delivering a copy of the summons to his father. Section 53 of the Civil Code of Practice provides an incompetent, who has a committee, is brought before the court by summons being served upon the incompetent himself and a copy thereof being delivered to his committee. The record on the first appeal shows summons was served upon the incompetent, Raymond McComas, and one reason that judgment was reversed was because he was served only as an individual and no service was had upon his committee or other person having him in charge, as provided by Section 53. The record on the present appeal shows the committee entered his (committee's) appearance by filing answer, which he had a right to do, Davenport v. Jenkins' Committee, 214 Ky. 716, 283 S. W. 1044. Service was had upon the incompe-

tent himself, as shown by the record on the former appeal, and when the case was returned the committee's appearance was entered by filing answer, therefore the incompetent and his committee were both properly before the court. The fact that a second summons was served on the father of the incompetent before the second trial of the case and that service was not again had upon the incompetent, himself, or upon his committee is immaterial.

We must disagree with appellants that the court permitted incompetent evidence to be introduced upon behalf of appellees. Cleveland Hensley and Tilden Hensley, half brothers of testator's wife, testified as to certain statements made to them by testator several years after he executed his will to the effect that his wife would not allow him to give any part of his property to the children of his deceased daughter, Mrs. Hull. Such declarations by the testator were not competent whether made before or after the execution of the will as direct and substantive evidence of undue influence or to show that the will was procured thereby, but are only admissible to show testator's mental condition at the time of making the will and his susceptibility to the influence of his wife, Wall v. Dimmitt, 114 Ky. 923, 72 S. W. 300, 24 Ky. Law Rep. 1749; Wilson v. Taylor, 167 Ky. 162, 180 S. W. 45; Mullins v. Mullins, 229 Ky. 103, 16 S. W. (2d) 788. That this rule is in harmony with text writers and with decisions of other courts may be seen from an examination of 6 Wigmore on Evidence (3d Ed.) pages 119, 121, 123, Section 1738, and annotation in 79 A. L. R. 1447. Therefore, this evidence was not incompetent and the record does not show appellants asked the court to admonish the jury that they should not consider it as substantive evidence on the question of undue influence but only as to testator's susceptibility to such influence.

Appellants argue that the court erroneously excluded certain testimony of Jake McComas, but the record shows the court in excluding this evidence refused to let appellants again go over the same ground they had once traveled, and a check of the record shows that some of the evidence appellants' brief claims was rejected, was in fact admitted by the court. The complaint that Jake McComas was not allowed to deny an instance, hereinafter referred to, which was related by

Ed. Deitz, is not well founded. **The record shows Jake** did deny this testimony of Deitz.

The testator was an old, illiterate man, but through hard work and frugal living he has amassed an estate of some $20,000. His daughter, Lou Jane, had married a man by the name of Hull, which marriage resulted in a divorce, and testator and his wife buried this daughter and reared her children. The grandmother developed a great antipathy toward these Hull children, while the grandfather appeared to be fond of them, especially of William Hull, who also went by the name of William McComas. This son lived with his grandparents and was of material help to his grandfather and appears to have gotten along well with him, but his grandmother could not forget he was the son of the man who made her daughter unhappy and she would drive William away from home.

As is usual in such cases, a considerable amount of proof was taken and naturally a good part of it is conflicting. Only one ground of contest is urged against the will and that is undue influence. The testimony for appellants is that Mr. McComas, though an unlettered, plain farmer, was a man of his own mind, not susceptible to influence and ran his own business and was not under the dominion of his wife. On the contrary, the evidence for appellees was that Mrs. McComas domiated her husband in everything, and she was especially vehement when it came to the disposition of his property and all through life after the mother of the Hull children died, she declared they would never get a penny of her husband's estate. We will not attempt to detail the evidence on either side as it is too voluminous to go into, but we make specific reference to only one instance and that is the testimony of Ed. Deitz, who married a niece of testator. While he and his wife were visiting Mr. and Mrs. McComas about the time the will was executed, Mrs. Deitz mentioned to Mr. McComas not to forget Lou (Mrs. Hull) in his will. The old gentleman replied that she had done more for him than all the rest of his children. Thereupon Mrs. McComas, "rolled up her sleeves, and doubled her fists, cracked him on the nose, and said, 'You damn old fool, you leave them Hulls anything, I'll cut your damn throat.' "

As above stated, the evidence is conflicting, but one

reading the record will find ample evidence to support the finding of the jury that the will is the result of undue influence exerted on testator by his wife.

The judgment is affirmed.

Judge Cammack not sitting.